[Civil No. 1712. Filed November 28, 1919.]

[185 Pac. 361.]

# G. H. COFFIN and OLIVE A. STARK (Formerly OLIVE A. GRIMSHAW), Appellants, v. JAMES KING GREEN and JAMES KING GREEN, as Administrator of the Estate of ANNIE H. GREEN, Deceased, Appellees.

1. MORTGAGES—SUFFICIENCY OF EVIDENCE TO SHOW WARRANTY DEEDS MORTGAGES.—Evidence *held* to justify finding that warranty deeds, executed by plaintiff, and his mother, since deceased, to their mortgagees by earlier instruments, and placed in escrow with a bank, were in fact mortgages, and did not amount to a conditional sale of the land.

2. MORTGAGES—TEST OF CHARACTER OF DEED SHOWN BY CONTINUED EXISTENCE OF DEBT.—The principal test to be applied in determining whether a given instrument is a mortgage is whether the relation of the parties towards each other of debtor and creditor continued after the execution of the instrument.

3. MORTGAGES—SIMULTANEOUS ESCROW AGREEMENTS INSUFFICIENT TO CUT OFF EQUITY OF REDEMPTION.—Where warranty deeds executed by the owners of land were intended as mortgages at the time they were executed, the agreements under which they were deposited in escrow with a bank, executed at the same time and as part of the same transaction, cannot be construed as having the effect to cut off the equity of redemption vested by law in the grantors.

4. MORTGAGES—STIPULATION FOR ABSOLUTE OWNERSHIP ON DEFAULT INEFFECTUAL.—No force will be given a stipulation in a mortgage or in a deed intended as a mortgage, whereby the mortgagor agrees that if he fails to make payment by a stated time the mortgagee shall become absolute owner of the property.

5. MORTGAGES—STIPULATION FOR ABSOLUTE OWNERSHIP ON DEFAULT INEFFECTUAL IN EQUITY.—Where a mortgagor by agreement made separately from the mortgage, but at the same time stipulates that if he fails to make payment by a stated time the mortgagee shall become absolute owner of the property, no effect will be given to such an agreement in equity.

6. MORTGAGES—CONSTRUCTION OF INSTRUMENTS ADVERSE TO CONDITIONAL SALE.—A court of equity in a contest over the question

6. Conditional sale as equitable mortgage, note, 4 **Am. St. Rep.** 699.

as to whether a given transaction constituted a conditional sale of land or a mortgage will lean to the theory that the transaction was a mortgage.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Affirmed.

### STATEMENT OF FACTS.

This action was instituted by the appellee, James King Green, in his individual capacity and as the administrator of the estate of Annie H. Green, deceased, against the appellants, G. H. Coffin and Olive A. Stark (formerly Olive A. Grimshaw), for the purpose of having two certain warranty deeds declared to be mortgages, and for an accounting and redemption.

The court found that the instruments in question were in reality mortgages, and on an accounting entered a judgment in favor of the appellee, in his dual capacity, and against the appellants, for the sum of $9,395.89, the difference between the amount received by the appellants from the sale of the premises described in the instruments and the amount of the mortgage indebtedness owing to the appellants from the appellee and Annie H. Green, deceased, plus interest, taxes, costs, etc. There is, as we understand, no fault found with the amount adjudged by the court to be paid, if the judgment is in other respects warranted.

Messrs. Clark & Clark and Mr. George H. Crosby, Jr., for Appellants.

Messrs. Kibbey, Bennett & Jenckes, for Appellee.

BAKER, J. (After Stating the Facts as Above.) It appears from the evidence that on July 19, 1912, T. M. Green (brother of appellee, James King Green) was the owner of the west half (W. ½) of section 14, township 3 north, range 1 east, Maricopa county, Arizona, subject to mortgages aggregating $32,000,

and that on that day he conveyed the north half (N. ½) of the tract to his brother, the appellee, James King Green, and the south half (S. ½) of the tract to his mother, Annie H. Green, now deceased. On October 8, 1914, changes and transmutations of the encumbrances on the land had occurred, with the result that the appellant G. H. Coffin held a mortgage of $6,000 on the south half (S. ½) of the tract, subject to prior mortgages thereon of $9,000, and the appellant Olive A. Stark (formerly Olive A. Grimshaw, and sister of the appellant G. H. Coffin) held a mortgage of $8,000 upon the north half (N. ½) of the said tract, subject to prior mortgages thereon of $9,000. On said last-mentioned date, the appellee, James King Green, and his mother, Annie H. Green, by and through her attorney in fact, T. M. Green, executed separate instruments, in the form of deeds absolute, to the appellant G. H. Coffin to the north half (N. ½) and the south half (S. ½) respectively, of the west half (W. ½) of said section 14. These deeds were then placed by the parties in escrow in the Phoenix National Bank, the terms of the written escrow being, in substance, that if the grantors in the deeds should pay the Coffin and Stark mortgages and the interest on the prior mortgages, on or before July 1, 1915, the deeds should be returned to the grantors, and that if the grantors failed to pay the Coffin and Stark mortgages by July 1, 1915, and the interest on the prior mortgages, the deeds should be delivered to the grantee. The grantors in the deeds, James King Green, and his mother, Annie H. Green, remained in possession of the premises until May 18, 1915, when they, jointly with the appellants, Coffin and Stark, leased the whole of the premises to Courtway and Lillis, for the whole of the year 1915, and for the whole of the cropping season of 1916, on shares, and such lessees took possession of the land and farmed the same from May 18, 1915, to the end of the year 1916, and paid the rental agreed upon partly to the

Greens and partly to Coffin. In April, 1915, the appellee Green paid to the appellant Mrs. Stark, at her request, the sum of $300, which was to be applied upon the interest due upon her mortgage upon the premises. On September 29, 1915, three months after the time when the escrow agreements expired, the appellant Coffin wrote to the appellee, Green, calling his attention to the fact that the interest on the prior mortgages on the property would be due on October 1st, and in the letter said:

"I suppose you will be in a position to take care of it [interest]. Please let me hear from you, etc."

On July 5, 1917, long after the expiration of the escrow agreements, the appellee, Green, paid Coffin, the appellant, a charge for the excess water used on the land after July 1, 1915. The appellee, Green, and his mother, Annie H. Green, failed to pay the Coffin and Stark mortgages on July 1, 1915, the time stated for such payment in the escrow agreements, and thereafter, to wit, on or about October 9, 1915, the appellant Coffin procured the warranty deeds from the Phoenix National Bank, and placed them on record, and thereafter conveyed one-half (½) of the tract of land to his sister, the appellant, Olive A. Stark (formerly Olive A. Grimshaw). In December, 1915, Annie H. Green, then living, sent to the appellant Coffin a draft for $2,500, to apply on the Coffin and Stark mortgages. On December 18, 1915, the appellant Coffin furnished the appellee, Green, with a statement of the ranch account in which he credits the account with the $2,500 paid by Mrs. Green, with other items of the receipts from the ranch, aggregating in all $4,054.45, and against these items of credits charges were made for taxes paid, etc., and all the interest due on the Coffin and Stark mortgages, amounting altogether to $3,884.03, leaving a balance of $170.42, to the credit of the Greens. When the

appellant Coffin procured the deeds from the bank, he did not surrender or tender the Coffin and Stark notes and mortgages to the Greens, neither did he release the mortgages on the record until December, 1916; one release being made on December 23d, and the other on December 28th. Finally, on February 10, 1917, the appellants, Coffin and Stark, sold and conveyed the half section of land for $120 per acre to other parties.

The appellee, James King Green, claims that the deeds in question were in fact mortgages, and made as additional security for the payment of the indebtedness then existing and owing from the appellee and Annie H. Green to the appellants. The appellants Coffin and Stark claim that the transaction in which the deeds were executed amounted to a conditional sale of the premises in controversy. If appellee's contention is correct, he is entitled to the relief awarded him; if not, he is not.

We think the foregoing facts fully justified the lower court in holding that the warranty deeds were in fact mortgages, although there are some circumstances in the record, we readily admit, favoring no little appellants' theory that the transaction was a conditional sale of the premises. We have given these circumstances full weight and consideration, although we do not state them in detail.

Contracts of the kind depicted by the record are narrowly watched, and courts lean strongly in favor of the equity of redemption. Chancellor Kent says that the distinction between a mortgage and bill of sale is that if the relation of debtor and creditor remains and a debt still subsists, it is a mortgage, but if the debt is extinguished by agreement of the parties, or the money advanced was not by way of loan, and the grantor has the privilege of refunding if he pleases by a given time, and thereby entitling himself to a reconveyance, it is a conditional sale.

4 Kent, Commentaries, 145. The principal test to be applied in determining whether a given instrument is a mortgage is whether the relation of the parties towards each other of debtor and creditor continued after the execution of the instrument. 20 Am. & Eng. Ency. of Law 2d ed., p. 940. Says the Supreme Court of California, in *Montgomery* v. *Spect,* 55 Cal. 352:

"Whether a deed absolute in form be a mortgage is a question of intention to be inferred from all the facts and circumstances of the transaction in which the deed was executed, taken in connection with the conduct of the parties after its execution. In such cases, the central fact to be found is the existence of an indebtedness at the time of the transaction, and a continuation of the relation of debtor and creditor. If that fact be found, the inference deducible from it is that the deed was not made to transfer the title to the land described in it, but was made for the purpose of securing the debt which the grantor owed· to the grantee."

There is no question but that the relation of debtor and creditor, and also mortgagor and mortgagee, existed between the parties at the time the escrow agreements and deeds were executed, and the evidence fairly tends to show that such relation did not cease to exist, but that it continued after the execution of the instruments. This is evidenced by the receipt of payments on the interest due on the mortgages after the execution of the escrow agreements and deeds, and also by the fact that the appellant Coffin retained possession of the notes and mortgages even after he had procured the delivery of the deeds to him by the Phoenix National Bank. The action of the appellant Coffin in accounting to the appellee, Green, for the rents and profits of the land covering a period after he had secured possession of the deeds from the escrow holder and had recorded them, and the further fact that both of the appellants joined the appellee in a lease of the premises to other parties for a period extending more than a year beyond the

escrow period, manifestly indicate that the appellants recognized that the appellee possessed an equity in the premises after the time Coffin had secured the deeds from the depository and placed them on record.

The deeds being intended as mortgages at the time they were executed, the escrow agreements executed at the same time and as a part of the same transaction cannot be construed as having the effect to cut off the equity of redemption vested by law in the appellee. The proposition is well settled that no force will be given to a stipulation in a mortgage (or in a deed intended as a mortgage) by which the mortgagor agrees that if he fails to make payment by a stated time the mortgagee shall become the absolute owner of the property. 27 Cyc. 1098. And it is also firmly established, in equity, that no effect will be given to such an agreement made separately from the mortgage but at the same time. 11 Am. & Eng. Ency. of Law, p. 243; *Plummer* v. *Ilse,* 41 Wash. 5, 111 Am. St. Rep. 997, 82 Pac. 1009, and note to the same in 2 L. R. A. (N. S.) 628.

As we view the facts, we believe it to be our duty—under the rule that a court of equity in a contest over the question as to whether a given transaction constituted a conditional sale of land or mortgage—to lean to the theory that the transaction was a mortgage, "as that secures the interests of all parties and works a hardship to none." *Irwin* v. *Coleman,* 173 Ala. 175, 55 South. 492; 3 Pomeroy's Equity Jurisprudence, 3d ed., par. 1795; 1 Jones on Mortgages, par. 328.

By the decree in this case, the appellants have received the principal and interest in full on their loans, together with reimbursement for all expenses incurred and made on account of the transaction, and hence they suffer no hardship.

The judgment of the lower court is affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.