821 P.2d 282

**Charles R. BOSTWICK,
Plaintiff/Counter-defendant/Appellant,**

v.

**Barbara JASIN and Robert
Jasin, Defendants/Counter-
claimants/Appellees.**

**No. 2 CA–CV 91–0141.**

Court of Appeals of Arizona,
Division 2, Department B.

Nov. 14, 1991.

Burger, Gibson, Matheson & Weber by
Rodney M. Matheson, Mesa, for plain-
tiff/counter-defendant/appellant.

Gove L. Allen, Mesa, for defen-
dants/counter-claimants/appellees.

## OPINION

FERNANDEZ, Judge.

The issue presented in this case is who owns a 2½ acre parcel of property in Pinal County. Appellant Charles Bostwick contends that he owns a one-half interest as a tenant in common with appellees Barbara and Robert Jasin. The Jasins contend, on the other hand, that they are the sole owners of the property. The trial court ruled in favor of the Jasins and we affirm.

Charles Bostwick filed suit in January 1989 to partition the property or to have it sold and the proceeds equally divided. He contends that his mother, Hazel Bostwick, was a tenant in common with his sister, Barbara Jasin, and that he now owns Hazel's one-half interest as sole heir under her will. The Jasins counterclaimed to quiet title to the property in them. They contend that Hazel's name was on the deed to secure repayment of a loan to Barbara, which was subsequently partially paid and partially forgiven.

The evidence Charles produced at the court trial was Barbara's testimony and three exhibits. Barbara testified that she and Robert had acquired the property in August 1980 for a purchase price between $26,000 and $27,000 and that they had borrowed the $8,000 down payment from Hazel and had assumed two loans as the balance of the purchase price. She stated that Robert's name did not appear on the deed because of recent difficulties he had had with his ex-wife. Barbara had prepared the deed herself. The grantees listed on the deed are "Hazel V. Bostwick or Barbara Kay Jasin." The $8,000 Hazel gave them for the down payment came from a loan Hazel had obtained by mortgaging her house.

Charles introduced into evidence Hazel's will leaving everything to him. There is no mention in the will of any specific item of property. Charles showed that the will was filed in an Illinois court in April 1987, but he did not show whether Hazel's estate was ever probated there. He also introduced a deed of distribution from the probate of Hazel's estate in Maricopa County conveying Hazel's interest in the property to him. No other documents from the Arizona probate were produced.

The Jasins' evidence was that they had purchased the property pursuant to an oral agreement. Barbara testified that Hazel had borrowed $12,000 from Cummard Home Loans on a five-year note and loaned them $8,000 of those proceeds for the down payment. The Jasins produced cancelled checks showing that they had paid $8,964.16 as repayment of that loan, $3,856.16 directly to Cummard, $4,408 in payments to Hazel, $300 in checks payable to cash with the cash being given to Hazel, and $400 in a check to a third person as payment for a car Hazel had purchased.

Barbara testified that Hazel sold her house in 1985 and applied some of the proceeds from the sale to the balance due on the Cummard note. Over objection by Charles, Barbara testified that Hazel had told the Jasins to forget about the balance of the money they had borrowed for the down payment after Barbara told her they could not make a balloon payment at that time. She also testified over objection that Hazel had told them she would sign papers removing her name from the deed. The Jasins introduced into evidence a Christmas card Hazel had sent them in 1986 on which she had written, "I will sign the papers." Hazel died in February 1987.

Besides the down payment, the Jasins had assumed a mortgage on the property on which approximately $11,000 was owed and agreed to pay the $6,875 balance due on a bank loan the sellers had obtained. The Jasins produced cancelled checks showing payments they had made to Great Western Bank totalling $6,874.09. That loan had been repaid in full at the time of trial. The Jasins also produced cancelled checks showing payments on the first mortgage they had assumed that totalled $12,490.75. At the time of trial, the balance due on that loan was approximately $600. In addition, the Jasins presented evidence that they had paid $4,380.48 in taxes on the property over the years.

Barbara testified that when she prepared the deed, she and Robert, Hazel, and the

sellers had met at the office of Continental Service Corporation, the escrow agent on the first mortgage, and a discussion ensued on whose name should appear as grantee on the deed. Robert did not want his name on it because of his ex-wife. Hazel said she should not be on it, but Robert said she should so there would be security for the down payment she had lent them. Barbara then put both her name and Hazel's on the deed. She testified that Hazel moved a mobile home on to the property and lived there off and on for a couple of years. After she sold her house in 1985, Hazel moved to Illinois. The Jasins have lived on the property since 1980.

Charles contends on appeal that 1) the deed created a tenancy in common so that one-half the property was subject to administration in Hazel's estate, 2) the Jasins cannot prevail because they did not file a creditor's claim against the estate, 3) the trial court erred in finding that Hazel had an equitable mortgage, and 4) the court erred in awarding the Jasins attorney's fees and court costs.

### EFFECT OF DEED

■ As Charles correctly observes, listing the grantees on the deed as Hazel Bostwick *or* Barbara Jasin created a tenancy in common pursuant to A.R.S. § 33–431(A). No survivorship rights were created because no express words to that effect were used. A.R.S. § 33–431(B). Moreover, a joint tenancy is not created in Arizona unless it clearly appears that the grantees have agreed to accept the conveyance as joint tenants. *Collier v. Collier,* 73 Ariz. 405, 242 P.2d 537 (1952).

The Jasins' counterclaim, however, was not based on a claim that the property is theirs because Barbara was the surviving tenant in a joint tenancy. It was instead based on the theory that Hazel's name had been placed on the deed solely as a security device and that an equitable mortgage had been created to secure the $8,000 loan she had made for the down payment. The trial court found that an equitable mortgage had been created. The only question then

is whether the evidence supports that finding.

A.R.S. § 33–702(A) provides that "[e]very transfer of an interest in real property, ... made only as a security for the performance of another act, is a mortgage." That section also provides:

> The fact that a transfer was made subject to defeasance on a condition may, for the purpose of showing that the transfer is a mortgage, be proved except against a subsequent purchaser or encumbrancer for value and without notice, notwithstanding that the fact does not appear by the terms of the instrument.

A.R.S. § 33–702(A).

■ The cases in Arizona hold that whether the transaction is a sale or a mortgage involves a question of the parties' intent, which must be established from the surrounding facts and circumstances. *Merryweather v. Pendleton,* 90 Ariz. 219, 367 P.2d 251 (1961); *Britz v. Kinsvater,* 87 Ariz. 385, 351 P.2d 986 (1960); *Coffin v. Green,* 21 Ariz. 54, 185 P. 361 (1919). That extrinsic evidence must be clear and convincing for a party to establish that a mortgage was intended. *Downs v. Ziegler,* 13 Ariz.App. 387, 477 P.2d 261 (1970). In *Coffin,* the court noted that "[t]he principal test to be applied in determining whether a given instrument is a mortgage is whether the relation of the parties towards each other of debtor and creditor continued after the execution of the instrument." 21 Ariz. at 59, 185 P. at 363. The evidence in this case clearly showed that the Jasins continuously paid on their loan from Hazel for at least three years after the deed was executed and that Hazel never paid any of the taxes or the loans that had been assumed. We conclude, therefore, that the evidence was sufficient to support the trial court's finding that the transaction created a mortgage.

### FAILURE TO FILE CREDITOR'S CLAIM

■ Charles next contends that the Jasins are precluded from holding title free and clear because they did not file a creditor's claim in Hazel's estate. We note that

Charles failed to show that there was ever a probate estate administered in Illinois; he showed only that Hazel's will had been filed there. He also did not show that a notice to creditors was ever published in the probate in Maricopa County. Barbara testified that she never received any notice of a probate proceeding in Arizona. In any event, however, the issue is moot. Because the evidence supports the trial court's finding that the transaction was a mortgage, the Jasins had no creditor's claim to file.

### VIOLATION OF DEAD MAN'S STATUTE

Charles also contends that the court erred in finding that the deed created an equitable mortgage, arguing that Barbara's testimony about Hazel's statements violated the dead man's statute. A.R.S. § 12–2251 provides that a party cannot testify about a transaction with or statement by a decedent "unless [the party is] called to testify thereto by the opposite party...." Because Charles called Barbara to testify on cross-examination about the transaction with Hazel, he waived any objection to her testimony about Hazel's statements.

### AWARD OF ATTORNEY'S FEES AND COSTS

Finally, Charles complains because the court awarded the Jasins their attorney's fees and costs, arguing that the case did not arise out of a contract. That is certainly true, but attorney's fees and costs are recoverable pursuant to the quiet title statute, A.R.S. § 12–1103. The record reflects that the Jasins complied with that statute. We find no error in the award of fees and costs.

Affirmed.

ROLL, P.J., and HATHAWAY, J., concur.