NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RAFAELA SOTO SESMA, *Plaintiff/Appellant*,

*v.*

TONI MARQUEZ, et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0335
FILED 8-23-2022

Appeal from the Superior Court in Maricopa County
No. CV2020-006318
The Honorable M. Scott McCoy, Judge

**JUDGMENT AFFIRMED; BOND VACATED IN PART**

COUNSEL

Dominguez Law Firm, P.C., Phoenix
By Antonio Dominguez, Lisa M. Montes
*Counsel for Plaintiff/Appellant*

Fowler St. Clair, PLLC, Scottsdale
By Elizabeth Best, Dustin Schanaker
*Counsel for Defendants/Appellees*

_____

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge James B. Morse Jr. joined.

_____

**C A T T A N I**, Chief Judge:

¶1        This property dispute involves ownership of a residence in Phoenix (the "Property") and arises out of a deed filed by Joe Manuel Lopez creating a joint tenancy with his son, Manuel Anthony Lopez.[1]   Joe subsequently passed away, and Manuel died a few months later.  Rafaela Soto Sesma, the devisee under Joe's will, then sued Toni Marquez, the personal representative of Manuel's estate, asserting that she was entitled to a one-half interest in the Property.  The superior court entered summary judgment in favor of Marquez, and Sesma now appeals.  Sesma also challenges the $5,000 supersedeas bond she was required to post to stay execution of the judgment pending appeal.  For reasons that follow, we affirm the summary judgment in favor of Marquez but vacate the bond in part, with instructions for the superior court to release any portion of the bond beyond the $319.35 awarded in taxable costs.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        The material facts are not in dispute.  Joe was the sole owner of the Property when he deeded it to himself and Manuel "as joint tenants with rights of survivorship."  Joe signed and recorded the deed.

¶3        Almost a year later, Joe married Sesma, and they lived together on the Property.  Joe then drafted a will purporting to give Sesma the Property upon his death.  A few months after that, Joe entered into a contract to sell the entire Property to a third party, but he died 10 days later and the sale was never completed.  Manuel recorded Joe's death certificate in the county recorder's office where the Property was located.  Just six months after Joe's death, Manuel died.

¶4        Sesma continued to live on the Property following Joe's and Manuel's deaths.  Marquez ultimately filed a successful forcible entry and

_____

[1]      For ease of distinguishing father and son, we refer to them by their first names.

detainer action in justice court to evict Sesma, which the superior court affirmed on appeal. Manuel's estate took possession of the Property following the superior court's judgment.

**¶5**       Sesma then filed this action in the superior court to, among other things, quiet title to an undivided one-half interest in the Property. Marquez counterclaimed to quiet title to the entire Property. The parties filed cross-motions for summary judgment. Sesma argued that the deed to Manuel did not create a valid joint tenancy or, if it did, the joint tenancy was severed by Joe's contract to sell the Property to a third party. Marquez in turn argued that Joe and Manuel held the Property as joint tenants, leaving Manuel as the sole owner (as reflected on the county assessor's website) when Joe died.

**¶6**       The court granted Marquez's motion, reasoning that Joe had created a valid joint tenancy and that Manuel was the owner of the Property in fee simple by virtue of surviving Joe. The court awarded Marquez $319.35 in taxable costs and set a $5,000 supersedeas bond, apparently based in part on potential lost rental revenue while the case remained pending on appeal.

**¶7**       Sesma timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1). *See also* ARCAP 7(c).

## DISCUSSION

**¶8**       Sesma argues the superior court erred by granting Marquez's motion for summary judgment, asserting that Joe did not create a valid joint tenancy, or alternatively, that the joint tenancy was severed when Joe executed a contract to sell the Property without Manuel's consent. Sesma thus contends she was entitled to Joe's share of the Property under the terms of his will. She also argues the court erred by setting an excessive supersedeas bond.

## I.       Joint Tenancy.

**¶9**       We review the superior court's ruling on motions for summary judgment de novo, viewing the evidence "in the light most favorable to the party opposing the motion." *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We review the court's interpretation and

application of statutes de novo. *Naslund v. Indus. Comm'n*, 210 Ariz. 262, 264, ¶ 8 (App. 2005).

**¶10** Under A.R.S. § 33-431(B), a joint tenancy can be created "by grant or transfer from a sole owner to himself and others" if the owner expressly declares the grant to be a "joint tenancy with right of survivorship." Joint tenants hold equal, undivided interests in the subject property. *Graham v. Allen*, 11 Ariz. App. 207, 208 (App. 1970). The key factor distinguishing a joint tenancy from other forms of ownership "is the right of survivorship by which the survivor takes the estate free of any claim of a deceased joint tenant." *In re Estelle's Est.*, 122 Ariz. 109, 111 (1979).

### A. Creation.

**¶11** Sesma first argues that to create a joint tenancy, the deed must show that all grantees knowingly and intentionally accepted the joint tenancy. Citing *In re Baldwin's Estate*, 50 Ariz. 265 (1937), *Collier v. Collier*, 73 Ariz. 405 (1952), and *Bostwick v. Jasin*, 170 Ariz. 15 (App. 1991), Sesma contends that Joe and Manuel owned the Property as tenants in common because nothing in the deed indicates that Manuel accepted the joint tenancy. *See* A.R.S. § 33-431(A).

**¶12** Neither the language of § 33-431(B) nor the cases on which Sesma relies require a grantee to accept joint tenancy in writing to create a valid joint tenancy. At most, these cases suggest that a grantee may *object* to the joint tenancy. *See In re Baldwin's Est.*, 50 Ariz. at 274–75; *Collier*, 73 Ariz. at 409, 411; *Bostwick*, 170 Ariz. at 17.

**¶13** Here, Manuel did not object to Joe's creation of the joint tenancy—in fact, following Joe's death, he sought to enforce it. Manuel recorded Joe's death certificate, and that filing established Manuel's right to sole ownership of the Property. Moreover, after Manuel died, his estate continued to assert its ownership right to the Property by counterclaiming to quiet title to the entire Property. Accordingly, the superior court correctly concluded that Joe created a valid joint tenancy and that Manuel, as grantee, accepted the joint tenancy.

### B. Severance.

**¶14** Sesma argues that, even assuming the deed created a valid joint tenancy, Joe severed the joint tenancy by entering a contract to sell the Property without Manuel's consent. A joint tenant can unilaterally sever a joint tenancy by (1) filing with the county recorder an affidavit terminating the right of survivorship, A.R.S. § 33-431(E), or (2) taking an action

"inconsistent with the continued existence of the joint tenancy." *In re Estelle's Est.*, 122 Ariz. at 111. A successful severance of a joint tenancy "leav[es] the joint tenants as tenants in common, without the right of survivorship." *Brant v. Hargrove*, 129 Ariz. 475, 478 (App. 1981).

¶15 Sesma asserts that Joe severed the joint tenancy because the proposed contract to sell the Property was inconsistent with the continued existence of the joint tenancy. Although "a joint tenant cannot convey an entire estate unless authorized by his co-tenant," he can sever the joint tenancy by conveying his interest. *Register v. Coleman*, 130 Ariz. 9, 12 (1981).

¶16 Here, Joe contracted to sell the entire Property to a third party, apparently without Manuel's consent. But although the proposed contract may have reflected Joe's *intent* to do something inconsistent with a joint tenancy interest in the Property, there is no indication that the sale ever went through or was otherwise enforceable. Thus, the proposed contract did not change the form of Joe's ownership interest in the Property. *See Smith v. Tang*, 100 Ariz. 196, 204–05 (1966).

¶17 Because Joe created a valid joint tenancy and his unsuccessful attempt to sell the Property did not sever the joint tenancy, the court correctly concluded that Manuel owned the Property in fee simple as the surviving tenant upon Joe's death.

## II.    Supersedeas Bond.

¶18 Sesma argues the superior court erred by setting an excessive supersedeas bond, asserting that, as in an eviction action, the bond should not have included lost rental income because Sesma did not retain possession of the Property while the appeal was pending. *See Grady v. Barth*, 233 Ariz. 318, 320–21, ¶¶ 10, 13 (App. 2013).[2] In superior court, Sesma requested a $319.35 supersedeas bond to cover taxable costs awarded to Marquez, whereas Marquez requested a $18,175.35 bond to cover estimated lost rental income during the appeal. The court set a $5,000 supersedeas bond, finding that "some lost rental income [was] to be expected." Although the court has discretion in determining an appropriate bond amount, *see, e.g.*, ARCAP 7(a)(4)–(9), we consider de novo the court's

_____

[2]    Sesma initially filed a special action seeking review of the supersedeas bond. This court declined to exercise special action jurisdiction and instead directed Sesma to raise any issues related to the supersedeas bond in this appeal.

interpretation of statutes and court rules. *Kellin v. Lynch*, 247 Ariz. 393, 396, ¶ 11 (App. 2019).

**¶19**　　　　A supersedeas bond permits an appellant to stay enforcement of the judgment and "preserve the *status quo* pending appeal" while concurrently providing adequate security for the appellee. *Id.* at ¶ 13 (citation omitted); ARCAP 7(a)(1)(A), (4)–(9). Generally, for judgments involving real property, the court may set a supersedeas bond in the amount of fair rental value while the appeal is pending. ARCAP 7(a)(5)(A).

**¶20**　　　　Here, however, the bond amount should not have included projected lost rental income. Manuel's estate held legal title to the Property and was in possession of the Property both before and after the judgment. In essence, the judgment itself preserved the status quo ante because it simply affirmed that the estate was in the same position as it was before the quiet title action. Thus, there was no need to stay enforcement of the judgment as to title, and no need to post a bond to secure possessory rights to the Property. Accordingly, the court improperly required Sesma to post a bond that included projected lost rental income, and it must release to Sesma all but the $319.35 necessary to cover taxable costs. *See* ARCAP 7(a)(4)(A).

## CONCLUSION

**¶21**　　　　For the foregoing reasons, we affirm the judgment in favor of Marquez but vacate the bond in part with instruction for the court to release the bond as detailed above. Marquez requests an award of attorney's fees on appeal under ARCAP 21(a), but that rule does not establish a substantive basis for awarding fees. We therefore deny her request. *See* ARCAP 21(a)(2). Both sides request an award of costs. As the prevailing party on the merits, Marquez is entitled to her costs on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:　　AA