477 P.2d 261

Claude DOWNS and Mary Downs, husband and wife, Appellants,

v.

Albert E. ZIEGLER, also known as Albert E. Ziegler, Jr., and Opal L. Ziegler, his wife; Al Ziegler Construction Company, Inc.; Donald E. Howland and Charlotte L. Howland, his wife; James C. Zemer and Rachel S. Zemer, his wife; Paul E. Sadler and Mary Carol Sadler, his wife; and Continental National Bank, Appellees.

No. 1 CA–CIV 1221.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 7, 1970.

Rehearing Denied Dec. 31, 1970.

Review Denied Feb. 9, 1971.

Harold Riddel, Phoenix, for appellants.

Lewis & Roca by John P. Frank, Phoenix, for appellees.

HAIRE, Judge.

Plaintiffs, Claude and Mary Downs, commenced an action to foreclose a real estate mortgage and to hold Albert Ziegler, the mortgagor, and three doctors alleged to have subsequently agreed to pay the mortgage, liable for any deficiency remaining after the foreclosure sale of the mortgaged property. The case was tried to the court

sitting without a jury, and the court entered judgment for plaintiffs on the issue of foreclosing the subject mortgage, and for the defendant doctors on the issue of their liability for any resulting deficiency. Plaintiffs appealed from that judgment.

The facts necessary for a determination of this appeal are as follows: Defendant Ziegler was in the construction business, having built and owned four apartment buildings. One of the apartments was built on land conveyed to Ziegler by the plaintiffs. Ziegler paid for this land by giving the plaintiffs an installment promissory note in the sum of $75,000.00, secured by a mortgage on the land. Some two years after the purchase of the land Ziegler encountered financial difficulties. At that time Ziegler was unable to meet his financial obligations, including a $30,000.00 promissory note for a personal loan from the Continental National Bank. One of the bank's officers contacted his own brother, Dr. Howland (one of the defendant doctors), and advised him of Ziegler's situation, suggesting that he, in association with two other doctors (Drs. Zemer and Sadler), undertake a refinancing of the property owned by Ziegler. The plan was that the doctors would collectively make available their credit so that $21,000.00 could be obtained to prevent foreclosure on the property, and also that they would guarantee payment of Ziegler's obligation to the bank in the sum of $30,000.00.

The arrangement was consummated under an agreement dated April 15, 1965, pursuant to which Ziegler agreed to convey to the doctors his interest in the mortgaged parcel here involved, in exchange for the doctors' agreement to advance funds to bring current the various secured indebtednesses against the property, and to guarantee payment of Ziegler's promissory note to the bank in the amount of $30,000.00.

The agreement also provided for the "assumption of payment [by the doctors] of the balance due and owing * * * on any obligations secured by mortgages of record with respect to * * *" the property here involved. The agreement further provided that Ziegler could "repurchase" the property before the expiration of a year by paying to the doctors an amount calculated to reimburse the doctors for their expenditures, plus $10,000.00. In conjunction with this agreement the deeds were executed for the different properties involved,[1] none of which purported to bind the doctors to pay Ziegler's debts, but transferred title "subject to" enumerated encumbrances.

Defendant Ziegler cross-claimed against the defendant doctors, seeking judgment against them for any deficiency which might be rendered against him in favor of the plaintiffs.[2] In turn, the doctors cross-claimed against the defendant Continental National Bank alleging fraud and deceit on the part of the bank in inducing them to enter into the agreement of April 15, 1965. The trial court severed the doctors' cross-claim against the bank for trial at a later time.

At the trial the court admitted, over plaintiffs' objection, extrinsic evidence which tended to show that the April 15, 1965 agreement was in reality a mortgage rather than a contract of sale.

The principal issues raised on appeal are (1) whether the trial court properly admitted extrinsic evidence to show that the agreement of April 15, 1965 was actually a mortgage; (2) if extrinsic evidence was admissible, whether the evidence was sufficient to support the trial court's determination that the agreement was a mortgage rather than an agreement of sale; and (3) whether the trial court erred in admitting into evidence certain requests for

1. The arrangement included three other parcels of land, together with several mortgages and other secured obligations not directly pertinent to this appeal.

2. The judgment entered by the trial court did not award a deficiency judgment against either Ziegler or the defendant doctors. Plaintiffs did not appeal from the failure to award a deficiency judgment against Ziegler.

admissions made by Ziegler and the bank. Collateral issues are raised in addition to these and will be considered elsewhere in this opinion.

There is no dispute between the parties that if the subject agreement be construed as an agreement of sale, then the defendant doctors would be personally liable for the payment of the mortgages here involved.[3] There is additionally no assertion that the doctors would be liable for those sums if the court properly found a mortgage, and indeed the contrary has been affirmed by the appellants in their reply brief, acknowledging therein that a first mortgagee, absent consideration for the alleged assumption of liability in the second mortgage, cannot recover from a second mortgagee. *See, e. g.,* Garnsey v. Rogers, 47 N.Y. 233, 7 Am.Rep. 440 (1872); Savings Bank of Southern California v. Thornton, 112 Cal. 255, 44 P. 466 (1896); and J. Osborne, Mortgages § 266 (2d ed. 1970). Further, no claim has been made that there was consideration given for the assumption of liability in the agreement if properly held to constitute a second mortgage. Indeed, the dispute between the parties has not touched upon the *effect* of the trial court's finding of a mortgage, but has centered on the propriety of making such a finding in light of an instrument purporting on its face to be an agreement of sale.

In addition to the assumption language previously quoted, the agreement states:

"8. Nothing herein contained shall be construed to involve a loan from Buyers to Sellers or to create the relationship of mortgagors and mortgagees between the parties hereto, it being understood and agreed between Buyers and Sellers that the transaction provided for are a sale and a conveyance of real property and option for a valuable consideration to purchase real property under specified conditions and on specified terms."

Although there is case authority in other jurisdictions that if an agreement for recon-veyance expressly recites that the transaction is not a mortgage such a recital is conclusive of the matter, it has also been held that such a recital is not conclusive, and that a deed intended as security for a debt will be found a mortgage *no matter how strong* the language of the deed or of any accompanying instrument. 59 C.J.S. Mortgages § 27b at 64 (1949). We believe that the provisions of A.R.S. § 33–702 are pertinent to the decision of this question in Arizona. That statute provides:

"Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is a mortgage, except a transfer of personal property accompanied by an actual change of possession, which is deemed a pledge. *The fact that a transfer was made subject to defeasance on a condition, may, for the purpose of showing that the transfer is a mortgage, be proved except against a subsequent purchaser or encumbrancer for value and without notice, notwithstanding that the fact does not appear by the terms of the instrument.*" (Emphasis supplied).

Additionally, there is abundant Arizona case authority holding that parol evidence is admissible to show that a conveyance absolute on its face was intended as a mortgage even though the instrument was knowingly cast in the form of a conveyance, and that the true nature of the transaction is a question of intention to be inferred from all the facts and circumstances surrounding the transaction. *See* Merryweather v. Pendleton, 90 Ariz. 219, 367 P.2d 251 (1961); Britz v. Kinsvater, 87 Ariz. 385, 351 P.2d 986 (1960); Charter Gas Engine Co. v. Entrekin, 30 Ariz. 341, 246 P. 1038 (1926); and Coffin v. Green, 21 Ariz. 54, 185 P. 361 (1919). We therefore hold that in this case the trial court properly admitted extrinsic evidence for the purpose of showing that the parties intended an arrangement to secure the repayment of the defendant doctors rather than a sale.

3. An issue raised relating to the lack of an acknowledgment on the agreement will not be discussed in view of the decision we reach herein.

However, this extrinsic evidence must be clear and convincing in order to show that a deed absolute and a separate option to repurchase together constitute a mortgage. Merryweather v. Pendleton, *supra*, 90 Ariz. at 223, 224, 367 P.2d at 253. In the case under consideration, we are of the opinion that the defendant doctors sustained this burden.

■ Our Supreme Court has said that:

"Whether a transaction ostensibly a conditional sale is in fact an equitable mortgage or pledge depends ultimately upon the intent of the parties. Where, as in this case, the parties' testimony as to their intentions is wholly contradictory, such intentions must be determined from and in light of all the circumstances surrounding the transaction." (Merryweather v. Pendleton, *supra*, 90 Ariz. at 226, 367 P.2d at 255).

Of primary importance in Arizona in determining whether a transaction was intended to be a security device, i. e., a mortgage, or an absolute conveyance is the presence of a subsisting obligation. Our Supreme Court has drawn a firm distinction between a deed of conveyance coupled with an option to purchase, from which there cannot be inferred from the surrounding facts an intended obligation to repay, and a security device through which the sum paid was actually intended as a loan. Merryweather v. Pendleton, *supra*; and Charter Gas Engine Co. v. Entrekin, *supra*. This indeed is the prevailing rule. *See* 59 C.J.S. Mortgages § 28 (1949). Certain criteria which have been considered by the courts in determining whether a security device was intended have been succinctly enumerated in Merryweather, *supra*. These criteria are:

"(1) the prior negotiations of the parties, to discern if such negotiations contemplated a mere security for a debt; (2) the distress of the maker; (3) the fact that the amount advanced was about the amount that the 'grantor' needed to pay an existing indebtedness; (4) the amount of the consideration paid in comparison to the actual value of the property in question; (5) a contemporaneous agreement to repurchase; and (6) the acts of the parties in relation to each other, i. e., whether their acts are ordinarily indicative of a vendor-purchaser relationship or that of a mortgagor and mortgagee." (90 Ariz. at 239, 367 P.2d at 264). (Footnotes omitted).

■ The parol testimony is without contradiction that in their negotiations the parties contemplated security for the repayment of funds advanced by the doctors. The presence of other facts surrounding the agreement also furnish sufficient support in the record to find a mortgage. It is undisputed that at the time of the agreement, Ziegler was in severe financial distress, being threatened with foreclosures. The defendant doctors, further, guaranteed Ziegler's note to the bank in the amount of $30,000.00, which was about to be recalled, and the additional obligations undertaken by the doctors were for the amounts required to make current mortgage payments. In addition to these facts, there is uncontradicted testimony in the record that the doctors never as much as inspected the premises, never took possession of or occupied the same, and never collected any rents accruing therefrom. These surrounding facts are more consistent with a mortgagor-mortgagee relationship than with a seller-buyer relationship, and together with the doctors' testimony as to intent, furnish ample support for the trial court's conclusions.

■ Plaintiffs contend that the trial court committed error by admitting into evidence certain answers of the defendant Ziegler and the cross-defendant bank to requests for admissions filed by the defendant doctors. While it is reasonably clear that admissions under Rule 36, Rules of Civil Procedure, 16 A.R.S., are admissible in evidence against the party making the admissions and in favor of the party requesting the same (Finman, The Request for Admissions in Federal Civil Procedure, 71 Yale L.J. 371, 418–426 (1962); Comment, The Dilemma of Federal Rule 36, 56

NW U.L.Rev. 679, 682–683 (1961)), it is questionable whether the answers should be admissible as against other parties, especially where the answers cannot be construed as admissions against the interest of the answering party. Here, the answers made by the bank, although characterized as admissions, were in fact self-serving declarations with respect to the doctors' cross-claim against the bank. The bank's statement that the transaction herein was intended as a security device by all the parties to the transaction and not as a conveyance reaffirmed its position with respect to the doctors' cross-claim on fraud, and in no way could be construed as a statement damaging to the bank's interests. As the record discloses, the doctors' cross-claim against the bank was severed for separate trial, and the bank therefore was not even a party to the instant proceeding within the meaning of Rule 36(b).

A different problem is presented with respect to the alleged admissions made by the defendant Ziegler, which could be considered as admissions against his interest. Ziegler had filed a cross-claim against the doctors in this action. Although the statements made by Ziegler (to the same effect as made by the bank) were damaging to the plaintiffs, the statements were damaging as well to Ziegler himself, insofar as concerned his attempt to hold the doctors liable for any deficiency based upon the doctors' assumption agreement, which would only be enforceable if the agreement were to be construed as a contract of sale and not as a mortgage. It would appear logical, however, that in multiple party litigation, admissions of one party which adversely affect more than his own interests in the action, ought not to be admissible against other parties unless the other parties are afforded the right to cross-examine on the matter so admitted.

However, even if we consider that the admission into evidence of the above-discussed answers to requests for admission was error, we are not convinced that it was so prejudicial as to justify reversal. This was a trial to the court. The admissions contained no new evidence, but rather merely corroborated other testimony that the transaction was not intended as a sale. The other testimony and evidence, taken by itself was sufficient to support appellees' burden of demonstrating the intent of the parties by clear and convincing evidence.

The judgment of the trial court is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.