# 550

499 P.2d 164

Mary SHELTON, Administratrix of the Estates of Mose Broussard, Deceased, and Georgia Mae Broussard, Deceased, Appellant,

v.

D. C. CUNNINGHAM, Appellee.

No. I CA-CIV 1786.

Court of Appeals of Arizona,
Division 1.

July 25, 1972.

Rehearing Denied Aug. 24, 1972.

Review Granted Oct. 24, 1972.

Herbert Mallamo, Phoenix, for appellant.

Pollock & Lemberg by Gerald A. Pollock, Phoenix, for appellee.

KRUCKER, Chief Judge.

This appeal results from a judgment, after a jury trial, in favor of the defendant-appellee, D. C. Cunningham. Plaintiff-appellant, administratrix of the estates of Mose and Georgia Mae Broussard, both deceased, filed an action to have a deed of certain real property in Maricopa County, Arizona, declared to be a mortgage. The defendant denied the deed was intended to be a mortgage and counter-claimed to quiet title to the real property in himself.

The principle question before us is whether or not the transfer by deed of Lot No. 116, Broadway Estates, Maricopa County, Arizona, was an absolute sale or an equitable mortgage.

At the conclusion of the presentation of evidence, two interrogatories were submitted to the jury as follows:

"Interrogatory No. 1:

: What was the value of the real property located and described as 2528 East Tamarisk as of July 6, 1962?

Answer:

1. $2,500.

Interrogatory No. 2:

Did D. C. Cunningham and Mose Broussard and Georgia Mae Broussard, his wife, intend the deed executed on September 15, 1962, to operate or be construed as an equitable mortgage or an absolute sale?

Answer:

An absolute sale."

Briefly stated, the facts are that Mr. Broussard and his wife were the owners of property described as 2528 East Tamarisk, Phoenix, Arizona, where they lived with their five children for several years. Mr. Broussard had worked with Mr. Cunningham doing general yard work, gardening and related tasks. They had been casual friends and co-workers, although neither had been in the home of the other nor had they maintained a close friendship. In June of 1962 Broussard told Cunningham that he was going to lose his home unless Cunningham could help him financially. He stated that he needed $1,056.81 or he would lose the property that night. Cunningham agreed to advance the money and take a deed to the property. An escrow was set up whereby the property was conveyed to Cunningham by the Broussards. The escrow required $1,340.36 to close and a warranty deed was executed and acknowledged by the Broussards conveying the property to Cunningham on September 15, 1962. The Broussards remained in possession of the property and paid Cunningham the sum of $45 per month up to and including October, 1967.

The $45 monthly payment made by the Broussards to Cunningham was treated as rent. Discussion was had as to a reasonable rental between the two parties by comparison of the other houses in the neighborhood. The "rent receipt book" kept by Cunningham had been given to Mrs. Broussard so she could show the welfare department that they were not owners but tenants. It also indicated the amount of rent being paid.

It appears that there was some sort of an agreement to sell the house back to the Broussards. However, the parties never arrived at any terms of such sale, i. e., the time, the purchase price, and the down payment. Furthermore, there were none of the customary indicia of a loan—a promissory note, terms of repayment, and interest.

Both parties acted as landlord and tenant. Prior to the subject litigation defendant successfully maintained an eviction action and then rented the property to another person. After 1962 he consistently treated the property as his own, paying the taxes and assessments, maintenance and upkeep of the property.

The various criteria for ascertaining the intention of these parties in 1962 are set forth in Merryweather v. Pendleton, 91 Ariz. 334, 372 P.2d 335 (1962) and Downs v. Ziegler, 13 Ariz.App. 387, 477 P.2d 261 (1970). In *Merryweather,* our Supreme Court stated:

"In determining whether a transaction was for security purposes or was a bona fide sale, the courts consider the following factors: (1) the prior negotiations of the parties; (2) the distress of the 'grantor'; (3) the fact that the amount advanced was about the amount that the grantor needed to pay an existing indebtedness; (4) the amount of the consideration paid in comparison to the actual value of the property in question; (5) a contemporaneous agreement to repurchase; and (6) the subsequent acts of the parties, as a means of discerning the interpretation they themselves gave to the transaction." 91 Ariz. at 342, 372 P.2d at 340.

In *Ziegler,* we stated:

"Of primary importance in Arizona in determining whether a transaction was intended to be a security device, i. e., a mortgage, or an absolute conveyance is the presence of a subsisting obligation. Our Supreme Court has drawn a firm distinction between a deed of conveyance coupled with an option to purchase, from which there cannot be inferred from the surrounding facts an intended obligation to repay, and a security device through which the sum paid was actually intended as a loan." 13 Ariz.App. at 390, 477 P.2d at 264.

Applying these principles to the case at bench, we believe that the jury's finding that the 1962 transaction was an

**552**

absolute sale is amply supported by the evidence and the court properly accepted it.

 Plaintiff complains of the fact that the defendant was allowed to respond to a question as to what his understanding was, i. e., did he understand he was buying the property or making a loan on it? Plaintiff's counsel objected on the grounds that the question called for a conclusion and invaded the province of the jury. We find no merit in plaintiff's complaint since a witness' direct testimony concerning his intent is admissible and relevant when, as here, such intent is in issue. Longshaw v. Corbitt, 4 Ariz.App. 408, 420 P.2d 980 (1966).

Judgment affirmed.

HATHAWAY and HOWARD, JJ., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.