

FILED

AUG 9 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-18-1330-LBF |
| DOUGLAS THORPE, | Bk. No. 2:16-bk-13619-MCW |
| Debtor. | Adv. No. 2:17-ap-00109-MCW |
| DOUGLAS THORPE, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| TJ 12, LLC, | |
| Appellee. | |

Argued and Submitted on July 18, 2019
at Phoenix, Arizona

Filed – August 9, 2019

Appeal from the United States Bankruptcy Court
for the District of Arizona

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Madeleine C. Wanslee, Bankruptcy Judge, Presiding

———————

Appearances:  Ronald J. Ellett of Ellett Law Offices, P.C., argued for Appellant; Laura Rogal argued for Appellee.

———————

Before: LAFFERTY, BRAND, and FARIS, Bankruptcy Judges.


## INTRODUCTION

Former chapter 13[1] debtor Douglas Thorpe ("Doug," as he prefers to be called[2]) appeals the bankruptcy court's grant of summary judgment dismissing his adversary proceeding against Appellee TJ 12, LLC ("TJ 12"). Relevant to this appeal, Doug sought to have the pre-petition transfer of his residence from his father's living trust to TJ 12 declared to be an equitable mortgage. The bankruptcy court found that, because Doug never held legal title to the residence, he lacked standing to seek such relief.

We REVERSE and REMAND.

## FACTUAL BACKGROUND

In the mid-1990's, Doug moved into residential real property on

———————

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]Because this appeal involves other family members named Thorpe, we refer to them by their first names.

North Fraser Drive in Mesa, Arizona (the "Property"), which was owned by his father, Sherman Thorpe. Doug lived in the Property in exchange for making the mortgage payments and maintaining the Property. In July 1999, Sherman transferred the Property by quitclaim deed into the Sherman William Thorpe Living Trust dated October 26, 1988 (the "Trust"). The Trust provided that the Property would be devised to Doug upon Sherman's death. Doug's brother, William Thorpe, was named successor trustee under the Trust. Sherman passed away in December 1999. Thereafter, Doug continued to live in the Property, but William never transferred the Property to Doug, and title remained in the Trust.[3] In addition, the secured debt on the Property remained in Sherman's name.

Doug fell behind on the mortgage payments on the Property, and, in 2011, the secured creditor recorded a Notice of Trustee's Sale. Before the sale could take place, Doug and his wife filed a joint chapter 13 bankruptcy case. They listed the Property on Schedule A and claimed a homestead exemption in the Property on Schedule C. That bankruptcy case was dismissed preconfirmation in March 2013.

---

[3]The Trust contains an "unusual circumstances" provision under which the successor trustee is granted discretion to refrain from distributing Trust property in certain circumstances, such as where the beneficiary is having severe financial difficulties. The Trust also contains a spendthrift provision. TJ 12 asserted in the bankruptcy court that William intentionally refrained from transferring the Property to Doug pursuant to these provisions. Doug argued (and William testified in his deposition) that the failure to transfer title was inadvertent. The bankruptcy court did not make any finding on that issue.

At that point, Doug needed funds to cure the mortgage arrears to stop the trustee's sale. He sought financing and was put in touch with TJ 12. TJ 12 agreed to purchase the Property. At Doug's behest, on August 22, 2013, William, as trustee of the Trust, executed a Residential Resale Real Estate Purchase Contract with TJ 12 for $96,000.[4] He also executed a warranty deed transferring title to TJ 12. The next day, Doug and TJ 12 entered into a handwritten option agreement permitting Doug to rent the Property with an option to purchase the Property for $119,196.50 at any time before September 1, 2014. The option agreement included an option to extend the expiration date for one year, on condition that both the rent and the purchase price would be increased. The agreement provided that if rent payments were past due by more than 30 days, the option agreement would terminate. The parties also executed a one-year residential lease agreement under which Doug was to rent the Property for $814 per month. According to Doug, all of the sales proceeds went to pay closing costs and the first deed of trust on the Property.

Doug filed a chapter 13 case in November 2016; the case was dismissed in March 2019. During the pendency of the chapter 13 case, he filed an adversary complaint against TJ 12, LLC. The Second Amended

---

[4]Doug asserts that the value of the Property at that time was $218,000 based on a Zillow estimate attached to his adversary complaint. The bankruptcy court made no valuation finding.

Complaint ("SAC") sets forth three counts, only the last of which is at issue in this appeal: Count One sought declaratory relief that certain IRS liens recorded against Doug in 2007 and 2008 attached to the Property; Count Two sought avoidance of the sale to TJ 12 as a fraudulent transfer under Arizona Revised Statutes § 44-1004(A)(2); and, alternatively, Count Three sought an equitable mortgage and forfeiture of all interest pursuant to Arizona Revised Statutes § 44-1202.

The parties filed cross-motions for summary judgment. TJ 12 moved for summary judgment on all claims. It argued that Doug lacked standing to prosecute any of the claims because he had never held title to the Property, and it was the Trust, not Doug, that had transferred the Property to TJ 12.

Doug moved for partial summary judgment, seeking a determination that he owned the beneficial interest in the Property at the time it was transferred to TJ 12.

After a hearing, the bankruptcy court granted TJ 12's motion for summary judgment and denied Doug's motion. The bankruptcy court found that, with the exception of Doug's leasehold interest, the Property was not property of the bankruptcy estate because, to the extent Doug held a beneficial interest when legal title to the property was owned by the Trust, that interest ceased when the Property was transferred out of the Trust by warranty deed to TJ 12.

The bankruptcy court agreed with TJ 12 that Doug lacked standing to prosecute any of the claims. With respect to the equitable mortgage claim, the court ruled that it should be dismissed because he had never held title to the Property and thus lacked standing, and because he had not shown how he could establish fraud or wrongdoing on the part of the purchaser. Accordingly, the court found that all three claims should be dismissed with prejudice.[5]

The court then denied Doug's motion for partial summary judgment because it found that the request for a determination that Doug held a beneficial interest in the Property before the sale to TJ 12 was irrelevant, given that any such interest ceased when the Property was transferred out of the Trust.[6]

The court also commented that

there is an in pari delicto concept at play here, and this concept is where both parties are furthering a wrongful act like potentially defrauding Debtor's current or future creditors by selling the real property for substantially less than its equivalent value, that the Court will not enforce the scheme or

---

[5]As noted, only the court's ruling on the equitable mortgage claim is at issue in this appeal. Doug did not assign error to the court's ruling regarding the IRS liens. At oral argument, his counsel conceded that, because the bankruptcy case had been dismissed, Doug no longer had any debtor-in-possession avoiding powers with which to prosecute the fraudulent transfer claim.

[6]At the hearing on the motion, TJ 12's counsel agreed that Doug held a beneficial interest in the Property while it was titled in the name of the Trust.

6

give relief to coconspirators in the scheme.

The bankruptcy court thereafter entered a judgment dismissing all claims against TJ 12 and denying Doug's motion for summary judgment. Doug timely appealed.[7]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(H) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in granting summary judgment to TJ 12 on Count Three for an equitable mortgage on the ground that Doug lacked standing?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). "When we conduct a de novo review, we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations." *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572–73

---

[7] During the pendency of this appeal, the bankruptcy court dismissed the chapter 13 case. However, the dismissal of Doug's case did not moot this appeal. *See Spacek v. Thomen (In re Universal Farming Indus.)*, 873 F.2d 1334, 1335-36 (9th Cir. 1989) (holding that controversy about priority of a trust deed was not so closely linked to the underlying bankruptcy that dismissal of the underlying chapter 11 case rendered the appeal moot).

(9th Cir. BAP 2011) (citations omitted). We must apply the same legal standards that all federal courts are required to apply in considering the propriety of summary judgment. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013).

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), applicable in adversary proceedings by Rule 7056). An issue is genuine if there is enough evidence for a reasonable trier of fact to make a finding in favor of the non-moving party, and an issue is material if it might legally affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. Once the moving party comes forward with sufficient evidence, the burden then shifts to the opposing party, who must present significant probative evidence tending to support its claim or defense. A motion for summary judgment may not be defeated, however, by evidence that is merely

colorable or is not significantly probative. *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotations omitted).

## DISCUSSION

Doug contends that the bankruptcy court erred in dismissing his equitable mortgage claim. He argues that, as the (former) owner of a beneficial interest, he has standing to assert an equitable mortgage. He also contends that, under Arizona law, there is no requirement to show fraud or wrongdoing to prevail on an equitable mortgage claim.

Arizona courts recognize the common law doctrine of equitable mortgage. This doctrine

> is a device used to prevent an avaricious lender from taking advantage of a distressed borrower. Even without avarice and distress, lenders have a natural dislike for taking a mortgage as security, because of the time and expense of a foreclosure upon default, and the tying up of the property during the redemption period. Other lenders don't like the ceiling on interest imposed by the usury laws. Were it not for the doctrine of equitable mortgage, they would always take an absolute deed, with an option to the borrower to repurchase at a much higher figure.

*Shelton v. Cunningham*, 508 P.2d 55, 58 (Ariz. 1973) (en banc). The party asserting an equitable mortgage must establish by clear and convincing evidence that a loan was intended rather than an outright conveyance. *Id.*

Ordinarily, when deciding whether an ostensible sale transaction should be recharacterized as an equitable mortgage, the trial court engages

9

in a fact-intensive inquiry to determine the parties' intent.[8] Factors to be considered include

> (1) the prior negotiations of the parties; (2) the distress of the "grantor"; (3) the fact that the amount advanced was about the amount that the grantor needed to pay an existing indebtedness; (4) the amount of the consideration paid in comparison to the actual value of the property in question; (5) a contemporaneous agreement to repurchase; and (6) the subsequent acts of the parties, as a means of discerning the interpretation they themselves gave to the transaction.

*Merryweather v. Pendleton*, 372 P.2d 335, 340–41 (Ariz. 1962) (en banc) (footnotes omitted). Here, the bankruptcy court never reached this analysis because it dismissed the claim for lack of standing.

To establish standing to pursue a claim, a plaintiff must show injury in fact, causation, and redressability (constitutional standing), and he must assert his own legal rights and not those of others (prudential standing).

---

[8]Arizona law permits a party to present evidence that a property transfer is actually a mortgage. Arizona Revised Statutes § 33-702 provides, in relevant part:

> **§ 33-702 Mortgage defined; admissibility of proof that transfer is a mortgage**
>
> A. Every transfer of an interest in real property, other than in trust, or a trust deed subject to the provisions of chapter 6.1 of this title, made only as a security for the performance of another act, is a mortgage. The fact that a transfer was made subject to defeasance on a condition may, for the purpose of showing that the transfer is a mortgage, be proved except against a subsequent purchaser or encumbrancer for value and without notice, notwithstanding that the fact does not appear by the terms of the instrument. (Footnote omitted).

*Veal v. Am. Home Mortg. Serv'g, Inc. (In re Veal)*, 450 B.R. 897, 906-07 (9th Cir. BAP 2011). Although the bankruptcy court did not explicitly address these requirements, it implicitly found that Doug was not asserting his own rights because Doug never held legal title to the Property.

But it is undisputed that Doug held a beneficial interest in the Property at the time of the subject transaction. The evidence in the record showed that he and his family regarded Doug as the owner of the Property: William testified in his deposition that his failure to transfer legal title to Doug after Sherman's death was not intentional but was due to oversight. And it is undisputed that Doug lived in the Property for many years, maintained it, and generally paid the associated expenses. If the secured creditor on the Property had foreclosed, he would have lost that beneficial interest. He sought funds from TJ 12 to protect that interest, and if he is unable to prove that the parties intended the transaction to be a mortgage rather than an outright conveyance, he may lose that interest permanently. As such, he has standing to assert the equitable mortgage claim.

That Doug did not hold legal title is not dispositive. "Equity regards the substance rather than the form of the transaction and will go behind the form to impose liability or defeat an unlawful claim." *Merryweather*, 372 P.2d at 340-41 (citations omitted). And although we have found no Arizona cases specifically addressing the standing of a holder of a beneficial interest, authority exists to support the proposition that such a holder may

11

assert a claim for an equitable mortgage. *E.g., Lindsay v. Matthews*, 17 Fla. 575, 576 (1880) (a conveyance by the trustee holding the legal title for the owner of an equitable interest gives that owner the same standing in equity as though the conveyance or mortgage were made by him); *Stoddard v. Whiting*, 46 N.Y. 627, 632 (1871) ("When the owner of the equitable title directs his trustee of the legal title to convey such title to a third person as security for a debt of the former to the latter, or as security for any other person, it is obvious that the latter holds such title as mortgagee of the former.").

Nor does it matter that there is no documentary evidence of a debt owed by Doug to TJ 12, even though a debtor-creditor relationship is required for an absolute transfer to be deemed a mortgage. *See Downs v. Ziegler*, 477 P.2d 261, 264 (Ariz. App. 1970) ("Of primary importance in Arizona in determining whether a transaction was intended to be a security device, i.e., a mortgage, or an absolute conveyance is the presence of a subsisting obligation."); *Charter Gas Engine Co. v. Entrekin*, 246 P. 1038, 1040 (Ariz. 1926) (finding no equitable mortgage where there was no obligation or subsisting indebtedness created or continued by the parties' agreement). Nevertheless, it is the intent of the parties that is determinative, not whether there is "express evidence" of a debt. *Merryweather*, 372 P.2d at 339-40.

Doug also argues that the bankruptcy court erred to the extent it

granted TJ 12's summary judgment motion on the ground that there was no evidence of any fraud or wrongdoing by TJ 12. He argues–correctly–that the factors to be considered in determining whether the parties intended a mortgage rather than an absolute conveyance do not include a requirement that fraud or wrongdoing be shown.[9] Thus, it was error for the bankruptcy court to base its ruling on this ground.

Finally, Doug complains that the bankruptcy court erred in basing its ruling on the doctrine of in pari delicto ("equally at fault") because there was no evidence of wrongdoing on his part. But the bankruptcy court's comments regarding the doctrine appeared to be dicta, as they were unnecessary to its ruling; accordingly, they do not constitute a separate ground for reversal.[10]

---

[9]That said, equitable relief is generally used to remedy a "wrong" where there is no adequate remedy at law. *See* 27A Am. Jur. 2d *Equity* § 6 ("It is an established maxim that equity will not suffer a wrong to be without a remedy[.]" (footnote and citations omitted)). In an equitable mortgage case, the "wrong" is the inconsistency between the terms of the transaction and its economic substance, where the form of the transaction permits the grantee/mortgagee to circumvent the protections of a foreclosure proceeding.

[10]Doug submitted with his excerpts of record the deposition transcript of Troy McNaughton dated May 22, 2018, in which Mr. McNaughton admitted to sending texts to Doug stating that TJ 12 needed to be "paid off." TJ 12 objected to the inclusion of that transcript because it was not presented to the bankruptcy court. We agree that the transcript is not properly part of the record on appeal. *See Edwards v. Wells Fargo Bank, N.A. (In re Edwards)*, 454 B.R. 100, 104 (9th Cir. BAP 2011). In any event, this evidence has no bearing on Doug's standing, and we have not relied on it in reviewing the bankruptcy court's ruling.

**CONCLUSION**

For these reasons, we REVERSE the bankruptcy court's grant of summary judgment to TJ 12 on Count Three of Doug's complaint and REMAND for further proceedings in accordance with this disposition.[11]

---

[11]We express no opinion on whether the bankruptcy court should adjudicate the equitable mortgage claim on the merits, given that the underlying chapter 13 case has been dismissed. *See Carraher v. Morgan Elecs., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir. 1992) (bankruptcy court has discretion to retain jurisdiction over related state law claims despite dismissal of underlying bankruptcy).